**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY EUGENE BURNS,<br><br>           Defendant. | Case No. 24-cr-151 (JMC) |

## ORDER DENYING GOVERNMENT'S MOTION TO RECONSIDER

The Government asks this Court to reconsider its denial of the Government's motion to admit other-crimes evidence pursuant to Federal Rule of Evidence 404(b) against Defendant Anthony Eugene Burns.[1] The Government contends that this Court misapplied D.C. Circuit precedent in (a) failing to find the proffered evidence of Burns's three prior gun-related convictions relevant to a non-propensity purpose at issue in Burns's current felon-in-possession charge under 18 U.S.C. § 922(g)(1), and (b) finding any minimal relevance of such evidence substantially outweighed by the risk of unfair prejudice to Burns. Having further considered the applicable precedent and the facts of this case, the Court finds no such error and, accordingly, will **DENY** the Government's motion to reconsider.

## I.    BACKGROUND

On the evening of February 25, 2024, uniformed Metropolitan Police Department ("MPD") officers in marked scout cars approached a building in Southeast Washington, D.C., in response

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

to a report of a "disorderly group" inside the building. ECF 15 at 2. As they walked up to the building, they saw someone "quickly turn around and sprint away" from the officers. *Id.* at 3. That person was later identified as Defendant Burns. Multiple officers began chasing Burns. As they chased him down the stairs of the building and across the street, the officers "observed that he appeared to be repeatedly reaching toward the front side of his torso, between his mid-section and chest area." ECF 20 at 2. Next, according to the Government, two of the officers saw Burns "make an overt throwing motion and throw what they believed to be a firearm over a fence toward an open field." *Id.* According to Burns—who maintains his innocence—to the extent the officers saw Burns throw anything over the fence, they "did not know whether [he] threw a gun or something less dangerous and completely legal." ECF 23 at 5.

After the alleged throw, Burns continued running through an alley. ECF 15 at 3. The officers briefly lost sight of him but found him hiding on the side of a building "approximately a minute later" and detained him. *Id.* Two of the officers then went directly to the field into which they saw Burns throw something, and they recovered a loaded black Glock 27 handgun with a large magazine and a light attachment. *Id.* at 3–4. Shortly thereafter, Burns was indicted on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). ECF 7.

Among the predicate crimes for Burns's § 922(g)(1) charge were three armed robberies in late-2015 to which he later pled guilty. *See id.* at 1; Statement of Offense in Support of Guilty Plea, *United States v. Burns*, No. 16-cr-23-1 (ABJ), ECF 84 (D.D.C. May 11, 2017). In the first, Burns and his co-conspirators, wearing masks, entered a shoe store in Southeast D.C. with handguns and told those in the store to "get on the ground." ECF 15 at 5–6. Burns approached a store employee

with his gun drawn and demanded cash from the register while his co-conspirators held the customers and employees at gunpoint until they left the store with cash and shoes. *Id.* at 6. In the second incident, about a month later, Burns and an unidentified co-conspirator entered a 7-Eleven in Southwest D.C. wearing masks and hoodies. *Id*. Burns pointed his handgun at the store employee, grabbed him, forced him behind the counter, demanded money from the cash register and the safe, and struck the employee on the head with the gun. *Id.* Burns and his co-conspirator left that store with cash and goods, too. *Id.* Finally, less than an hour later, Burns and that same co-conspirator entered a different 7-Eleven in Northeast D.C. wearing the same clothes, jumped over the counter, pointed a gun at the cashier, and demanded money. *Id.* He and his co-conspirator grabbed the cash and left. *Id.* at 6–7. Days later, when Burns was arrested for the robberies, Burns possessed a .380 caliber Taurus pistol and five rounds of ammunition. ECF 20 at 3.

Burns will soon stand trial for possession of the gun he allegedly threw over a fence and into a field during a police chase in early-2024, in violation of § 922(g)(1)'s felon-in-possession ban. In advance of trial, the Government moved to admit evidence of the three armed robberies described above under Federal Rule of Evidence 404(b). ECF 15. Because Burns's "possession of the firearms and ammunition will be a disputed issue of fact," the Government argued, such evidence would "assist the government in establishing that: (i) the defendant's possession of the firearms in this case was knowing, intentional, and not the product of mistake, and/or (ii) the defendant had a motive to possess the firearms." *Id.* at 2. Burns responded that the prior-crimes evidence was not relevant to any non-propensity purpose and, in any event, would unfairly prejudice him at his jury trial. Feb. 26, 2025 Hr'g Rough Tr. 13:14–15:12.

The Court agreed with Burns and denied the Government's motion without prejudice to move for reconsideration with additional details on the gun used in the prior crimes and any other

legal arguments the Government may wish to make.[2] Feb. 26, 2025 Hr'g Rough Tr. 19:22–22:3, 24:2–4; Feb. 26, 2025 Min. Order. The Government now so moves, ECF 20, and Burns opposes, ECF 25.

## II.    LEGAL STANDARD

Federal Rule of Evidence 404 prohibits the admission of "[e]vidence of any other crime, wrong, or act" when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* (b)(2). Thus, Rule 404(b) prohibits the admission of prior-crimes evidence only "if it is offered for the impermissible inference that a defendant is of bad character resulting in bad conduct." *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002). "*Any*" other purpose besides that impermissible propensity inference, including but not limited to those purposes listed in 404(b)(2), "is a proper purpose" for admission. *Id.* (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

Courts in this Circuit apply a two-step test to determine the admissibility of prior-crimes evidence. First, they must determine whether the proffered prior-crimes evidence "is probative of some issue other than character." *Cassell*, 292 F.3d at 792. To make that assessment, the court must ask whether the prior-crimes evidence "tend[s] to make the existence of any fact that is of consequence to the determination of the action [i.e., the defendant's motive, intent, knowledge, etc.] more probable or less probable than it would be without the evidence." *United States v.*

---

[2] The Government also moved to admit evidence of Burns's prior armed-robbery convictions, as well as a distinct attempted-robbery conviction, for impeachment purposes under Rule 609 should Burns testify at his trial. ECF 15 at 2, 14–17. The Court granted that motion subject to further rulings on the scope of such evidence and any limiting instructions. *See* Feb. 26, 2025 Min. Order.

*Linares*, 367 F.3d 941, 946 (D.C. Cir. 2004) (quoting Fed. R. Evid. 401). Second, if they find a relevant non-propensity purpose, courts then apply Rule 403's balancing test, asking whether the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Such balancing "should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *Cassell*, 292 F.3d at 795 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)). These determinations lie within the discretion of the district court, and the D.C. Circuit "affords [the district court] 'much deference on review.'" *Id.* at 792 (quoting *United States v. King,* 254 F.3d 1098, 1104 (D.C. Cir. 2001) (Henderson, J., concurring)). Further, the district court's balancing under Rule 403 is "reviewed only for grave abuse." *Id.* at 796.

Although the Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration, the Supreme Court "has recognized, in *dicta*, the utility of such motions," and judges in this District often consider them. *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (citing *United States v. Dieter,* 429 U.S. 6, 8 (1976) (per curiam)). Although courts differ in the precise standard applied to such motions, Judge Walton has cogently advocated application of the "as justice requires" standard lifted from motions to reconsider interlocutory decisions in civil cases. *See id.* at 60–61. Under that standard, the court may grant the motion if "the Court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or [if] a controlling or significant change in the law has occurred," and if "some harm [] would flow from a denial of reconsideration." *Id.* at 61. Alternatively, the Court may grant reconsideration "if there are other good reasons for doing so." *Id.*

### III.    ANALYSIS

In denying the Government's first motion to admit evidence of Burns's three prior gun-related crimes, the Court could not find any non-propensity purpose for those crimes that would be probative of an issue in this case. Although the Government invoked multiple D.C. Circuit cases upholding, for lack of abuse of discretion, district court decisions admitting prior acts of gun possession to prove knowledge, intent, motive, or absence of mistake in § 922(g)(1) prosecutions, the Court disagreed that any of those cases governed its decision here. Feb. 25, 2025 Hr'g Rough Tr. 20:7–13. In its motion to reconsider, the Government offers additional reasoning, and some additional citations, to demonstrate that D.C. Circuit precedent indeed requires admission of the prior-crimes evidence here.

The Government's renewed argument relies on its plan to argue both actual possession and constructive possession at trial. Under 18 U.S.C. § 922(g)(1), the Government must prove that the defendant knowingly possessed the gun. Such possession can be either (a) "actual," meaning the defendant had "direct physical control over" the gun, or (b) "constructive," meaning that the defendant, "though lacking such physical custody, still ha[d] the power and intent to exercise control over" the gun. *Henderson v. United States*, 575 U.S. 622, 626 (2015). Formulated another way, for constructive possession, the Government must show that the defendant "knew of, and was in a position to exercise dominion and control over, the weapon." *United States v. Bryant*, 523 F.3d 349, 354–55 (D.C. Cir. 2008) (quoting *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C. Cir. 1991)). In determining whether the defendant had such "dominion and control," "the essential question is whether there is some action, some word, or some conduct that links the individual to the [gun] and indicates that he had some stake in [it], some power over [it]." *Id.* at 355 (quoting *Byfield*, 928 F.2d at 1166). Although mere proximity to the gun is not enough to prove constructive

possession, "proximity *plus* another factor," such as "connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise" may suffice. *Id.* (emphasis in original).

Here, the Government intends to argue both that Burns actually possessed the recovered gun in the time period before he allegedly threw it over a fence and into a field, and that he constructively possessed the gun after he threw it and while he continued fleeing from the police. ECF 20 at 8. And because multiple D.C. Circuit cases have affirmed lower-court rulings admitting evidence of prior gun possession crimes in constructive possession cases, the Government argues, this Court erred in declining to do so here. *See* ECF 20 at 4–5, 8 (citing *United States v. McCarson*, 527 F.3d 170 (D.C. Cir. 2008); *United States v. Garner*, 396 F.3d 438 (D.C. Cir. 2005); *Cassell*, 292 F.3d 788; *United States v. Brown*, 16 F.3d 423 (D.C. Cir. 1994)); *see also id.* at 6, 9 (citing two cases—*United States v. Douglas*, 482 F.3d 591, 600–01 (D.C. Cir. 2007), and *United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (en banc)—in which the D.C. Circuit affirmed admission of prior drug-possession crimes in trials for drug possession using similar reasoning).

This Court remains unconvinced. Despite the Government's many citations, the case that most closely fits the facts here is a different one altogether: *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004).[3] That case, particularly when read in contrast to the Government's cited cases, demonstrates that admission of Burns's three prior crimes would be improper under Rule 404(b) and, at a minimum, under Rule 403.

---

[3] To be fair to the Government, it did cite *Linares* in both its original motion in limine and its motion for reconsideration, but only in parentheticals or string cites for generic propositions outside the case's holding and without any discussion of the case's facts or outcome. *See* ECF 15 at 11; ECF 20 at 5.

**A. The Prior-Crimes Evidence Is Inadmissible Under Rule 404(b)**

Neither an actual-possession nor a constructive-possession theory renders Burns's prior crimes admissible. Start with actual possession. The D.C. Circuit has never held, as far as the Government notes or this Court is aware, that evidence of prior possession of a gun is probative of knowledge, absence of mistake, or any other non-propensity purpose to support an actual-possession theory in a gun case. That makes sense. As the *Linares* court explained, "it is hard to see how [a defendant] could possibly have possessed [a] gun unknowingly, i.e., without being aware that he possessed it or without realizing that the object in his hand was a gun," amid evidence that the defendant physically possessed and handled the gun. *Linares*, 367 F.3d at 946. The same goes for absence of mistake, *Linares* held. *Id.* at 947. The reason is straightforward: in *Linares*, as in many actual-possession cases, the defendant who physically handles a gun "could not have possessed the gun without recognizing the nature of the object in his hand." *Id.* at 951.[4] Because evidence establishing the *actus reus* (physical possession) also effectively establishes the *mens rea* (knowledge of that possession) in cases like *Linares*, "no reasonable jury could . . . acquit[] [the defendant] based on the belief that the government proved [actual] possession [the *actus reus*] but failed to prove knowledge [the *mens rea*]." *Id.* at 947–48. And in those cases, the "government's evidence has, by completely precluding an acquittal based on the failure to prove" the element that the prior-crimes evidence purports to prove for 404(b) purposes (namely, knowledge or absence of mistake), "effectively (though not formally) eliminated" that element and rendered any evidence supporting it irrelevant. *Id.* at 947; *see also United States v.*

---

[4] That reality distinguishes gun possession from, say, drug possession, where a reasonable jury may conclude for instance, depending on the facts of the case, that a defendant in physical possession of "a white powdery substance" did not know it was cocaine. *See Linares*, 367 F.3d at 951 (contrasting *Linares* with *Crowder*, 141 F.3d 1202, a drug-possession case). Of course, whether such non-propensity relevance is enough to overcome the risk of unfair prejudice under Rule 403 remains a separate question in those cases.

*Johnson*, 519 F.3d 478, 482–84 (D.C. Cir. 2008) (reaffirming *Linares*'s actual-possession holding).

Burns's prior crimes are irrelevant to any non-propensity issue under an actual-possession theory in the same way as were Linares's. First take the facts in *Linares*. There, as here, the defendant was charged under § 922(g)(1). *Linares*, 367 F.3d at 943. As established at trial, Linares picked up two friends in his car at a gas station, one of whom handed him a pistol. *Id*. Later that evening, from inside the car, Linares got into an argument with a group of people outside of a nightclub that "ended with the firing of six shots from Linares's car, and with Linares speeding away." *Id.* at 944. An MPD officer witnessed the shooting and began chasing Linares; another officer followed in his own squad car. *Id.* During the high-speed chase, Linares crashed into another car. *Id.* As the officers approached Linares's car, they saw him "throw a gun over a nearby fence." *Id.* At trial, the district court admitted under Rule 404(b)(2) testimony of a police officer who, four-and-a-half years prior to those events, arrested Linares "after seeing him drop a loaded handgun on the ground." *Id.* Linares was convicted and appealed. *Id.* at 945. The D.C. Circuit, agreeing with Linares, found the prior-crimes evidence irrelevant to any non-propensity purpose under either an actual- or constructive-possession theory. *Id.* at 943.

Key to the D.C. Circuit's actual-possession holding was the merger of the Government's possession and knowledge evidence. If the jury believed the officer's (and another witness's) testimony that they saw Linares hold, fire, and later throw the gun, that would establish both actual possession and knowledge of possession. *Id.* at 946. If a jury discounted that evidence, "then it should have acquitted based on the government's failure to prove possession rather than its failure to prove knowledge." *Id*. Either way, prior-crimes evidence purporting to prove knowledge or

absence of mistake did not "tend[] to make" either one "more probable or less probable" under the facts of that case. *Id.* (quoting Fed. R. Evid. 401).

So, too, under our facts here. The Government intends to prove actual possession through evidence that the officers witnessed Burns "repeatedly reach[] toward the front side of his torso," remove a gun, and throw it over a fence toward an open field. ECF 20 at 2. Defendant plans to counter that he actually threw something else—or, at least, that the officers could not have known that he threw a gun as opposed to something else. ECF 23 at 5. He does not intend to argue, nor reasonably could he, that *he* did not know that the object he repeatedly reached for, handled, and then threw was a gun, if in fact it was. As in *Linares*, if a jury credits the evidence that Burns possessed a gun before throwing it over the fence, it will also reasonably find that he knew it was a gun.[5] If it does not, the jury will acquit (as to actual possession, at least) based on lack of physical possession, rather than lack of knowledge. Separate proof of knowledge—or its close cousin here, absence of mistake—becomes irrelevant.[6] As *Linares* commands, and as no controlling case contradicts, evidence of Burns's prior gun possession crimes is therefore inadmissible under Rule 404(b)(2) as to any actual-possession theory.

But what, responds the Government here, about the rule that a defendant's "choice not to put at issue an element of the charged offense is *irrelevant* to the admissibility of evidence offered to prove that element"? ECF 20 at 6 (quoting *McCarson*, 527 F.3d at 173 (emphasis in original)). Even if Burns does not plan to dispute knowledge in a certain way, cannot the Government still

---

[5] To be sure, the witnesses in *Linares* said they saw the defendant shoot the gun, not just handle it and throw it. 367 F.3d at 944. Here, there is no evidence that Burns shot the gun he allegedly handled. But while shooting a gun makes it even *more* likely that the shooter knew its nature, this Court does not see how a reasonable jury could doubt that Burns knew it was a gun (assuming they find the object he held was a gun) given the evidence of how he possessed, handled, and threw it as he attempted to evade the officers. The reasoning of *Linares* supports that, and neither Party argues otherwise.

[6] The Government also invokes intent as a relevant non-propensity purpose, ECF 20 at 8, but intent is not an element under an actual-possession theory, *Linares*, 367 F.3d at 948.

introduce proof of it, since it is an element of the offense? *Linares* answers that objection, too. The *Linares* court's decision rested not "on anything Linares did or failed to do at trial"—not on any choice to put or not put an element at issue—"but rather that given the evidence the government presented, no reasonable jury could have acquitted Linares based on the belief that the government had proved possession but not *knowing* possession." 397 F.3d at 951 (emphasis in original). The nature of the Government's evidence, not the nature of the defense, is what rendered the other-crimes evidence irrelevant to any non-propensity purpose.

Next consider constructive possession. Unlike for actual possession, the D.C. Circuit has held in the constructive-possession context that "where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *Garner*, 396 F.3d at 443 (quoting *Cassell*, 292 F.3d at 793; *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001)); *see also McCarson*, 527 F.3d at 173. Yet, under the reasoning of *Linares*, those cases do not decide the question here. As an alternative to their actual-possession theory, the Government in *Linares* also pursued a constructive-possession theory: "that in light of [the officer's] testimony that after the crash Linares reached down onto either the car floor or his seat and 'came up [with] . . . a gun in his left hand,' the jury could have found that at some point the gun was not actually in Linares's hand" and thus that Linares constructively, rather than actually, possessed it. *Linares*, 367 F.3d at 947 (internal citation omitted). Accordingly, the Government urged, the D.C. Circuit's permissive constructive-possession rule would apply.

Not so, said the *Linares* court. The Government's problem was that the same evidence advanced to support its constructive-possession theory also supported its actual-possession theory. *See id.* ("The jury would have needed to consider constructive possession only if it entertained a

reasonable doubt as to actual possession, and the same sentence of [the officer's] testimony that the government quotes demonstrates that even if the possession had been constructive at some time, it became actual when Linares '[came up [with] . . . a gun in his left hand.'" (quoting the officer)). Had the jury rejected that and the other eyewitness evidence, "it would have lacked any basis to conclude beyond a reasonable doubt that Linares ever possessed the gun, *either actually or constructively*." *Id.* at 948 (emphasis added). At that point, prior-crimes evidence of knowledge, intent, or absence of mistake could make no difference to the outcome and became irrelevant under Rule 401 and thereby impermissible under Rule 404(b). *See id.*[7]

That same reasoning applies straightforwardly to the facts here. The Government contends that "the jury may choose to disregard the evidence that MPD officers observed the defendant toss the gun over a fence into the field where it was later recovered," and thus, as a backup to that actual-possession evidence, the Government will rely on a constructive-possession theory. ECF 20 at 8. In that case, the Government continues, "where the gun was recovered in a field near the defendant's flight path, the defendant's prior possession of firearms is powerfully probative to establish it was his gun that he intentionally possessed" and "tends to undercut any argument that the firearm belonged to someone else." *Id.* But the evidence that Burns threw the gun is the only *actus reus* evidence that the Government proffers. As the Government alleges, after Burns threw the gun, he continued running (away from it) down the alley. ECF 15 at 3. And though the officers "briefly lost sight of [Burns] in the alley," they found him hiding on the side of the adjacent street "approximately a minute later," at which point they detained him. *Id.* The Government does not

---

[7] The *Linares* court also noted that the district court declined to instruct the jury on constructive possession. *Id.* at 947. That was an alternative ground that led the panel to "doubt very much that the jury would have considered constructive possession." *Id.* But nothing in the court's reasoning rendered that fact necessary to the outcome. Instead, the court reasoned from the complete overlap between the actual- and constructive-possession evidence: if the jury believed Linares constructively possessed the gun, they would necessarily also believe that he actually possessed the gun—and if they did not believe he actually possessed the gun, they could not find constructive possession. *Id.* at 947–48.

allege, nor do its alleged facts render plausible, that Burns did anything after throwing the gun to "exercise dominion and control over" the gun or be "in a position" to do so. *Bryant*, 523 F.3d at 354–55. Lacking any such evidence, this case becomes just like *Linares*: the *actus reus* evidence of constructive possession extends no farther than that of actual possession, and no reasonable jury could find constructive possession if they did not also find actual possession. *Linares*, 367 F.3d at 947. The prior-crimes evidence is thereby rendered irrelevant, for it does not make "more or less probable" any "fact [that] is of consequence in determining the action." Fed. R. Evid. 401.

In that way, the D.C. Circuit's other prior-crimes caselaw becomes inapposite here for the same reasons explained in *Linares*. "[I]n each of those cases, unlike here, a reasonable jury could have concluded that the charged [constructive] possession was unknowing or mistaken, and thus the government needed the other-acts evidence to prove knowledge or absence of mistake." *Linares*, 367 F3d at 949. In *Cassell*, for example,

> the government charged the defendant with being a felon in possession after police searched his uncle's home and found firearms in the bedroom in which the defendant was staying. A reasonable jury could have concluded that while the defendant constructively possessed the weapons (in that he had dominion and control over them because they were in his bedroom), his constructive possession was unknowing—perhaps because his uncle stashed the weapons in the bedroom without telling the defendant.

*Id.* (citing *Cassell*, 292 F.3d 788). Same for *Brown*, 16 F.3d 423, in which "a reasonable jury could have concluded that someone else put the guns in [the defendant's co-defendant's daughter's bedroom safe] without the defendant's knowledge." *Linares*, 367 F.3d at 949–50. And ditto for *Garner*, 396 F.3d 438 (gun found under the defendant's car seat), and *McCarson*, 527 F.3d 170 (gun found in girlfriend's apartment), the two key post-*Linares* cases. As the *Garner* court explained, the jury there could reasonably have discredited the officer's testimony that he saw the defendant holding the gun that he then apparently dropped under his seat but "nevertheless convict[ed] [the defendant] based on the undisputed testimony that the gun was found under [the

defendant's] seat when the car was searched." 396 F.3d at 443. Thus, unlike in *Linares*, "the trial evidence" in *Garner* "did not force the jury to a disjunctive choice between actual possession or no possession at all." *Id.* at 443. Instead, a jury disbelieving the actual-possession evidence "would have faced a paradigmatic constructive possession scenario in which contraband (here, a firearm) is found in proximity to a defendant who may or may not have been *knowingly* in a position to, or have had the right to[,] exercise dominion or control over the contraband" but, rather, did so unknowingly through his proximity. *Id.* (internal citations and quotation marks omitted; emphasis in original). In such a case, according to the D.C. Circuit, other-crimes evidence of knowledge is relevant to determination of the action. *Id.* But not in *Linares*, and not here.

In short, D.C. Circuit precedent commands exclusion, not admission, of the proffered evidence of Burns's prior crimes under Rule 404(b). And the Government has offered no good reason for the Court to reconsider its prior ruling excluding that evidence.

### B. The Prior-Crimes Evidence Is Also Inadmissible Under Rule 403

Even if the above 404(b) analysis were in error, the Court would still exclude the proffered prior-crimes evidence under Rule 403. First, take the "probative value" side of Rule 403's scale. Let us say the Government in fact has some evidence that Burns took steps to exert dominion and control over the gun retrieved from the field near where he was arrested after allegedly throwing it over the fence. Perhaps, in the minute Burns was out of the officers' view, he tried to call a friend to ask them to go to the field and retrieve his gun before the cops got there. Maybe someone he knew was already there to grab his gun for him, rendering the gun essentially within Burns's control.[8] The Court doubts such evidence exists given its absence from two rounds of Government

---

[8] Additionally, the Government may try to argue (though it has not to date) that Burns's act of running away from the officers constituted "evasive conduct" that, along with his "proximity" to the gun, meets the *actus reus* requirement for constructive possession even without evidence that he physically possessed and threw the gun. *Bryant*, 523 F.3d

briefing and an oral argument. But even if it did, what exactly would Burns's three prior gun-possession convictions prove about his knowledge or intent to exercise control over a *different kind of handgun* found in an open field nearly ten years later? In each of his three prior convictions, Burns physically wielded and pointed a .380 caliber Taurus pistol—and in one case struck someone's head with it—in the course of armed robberies. ECF 20 at 3. Sure, those prior crimes would prove that he knows what a gun is and how to use it. But *Linares* tells us that is rarely, if ever, a valid non-propensity purpose. Beyond that, all his prior crimes would prove is that he physically and knowingly possessed a different kind of gun on another occasion long before. They would say very little, if anything, about his intent to exercise control—via some other person or mechanism—over a Glock 27 handgun lying a block or so away from him as he ran and hid from the police.

To be sure, the D.C. Circuit has stated generally that "evidence of a prior conviction for possession of contraband is relevant . . . when . . . a defendant is charged with constructive possession of the same type of contraband," and has affirmed admission of such evidence under Rules 404(b) and 403. *McCarson*, 527 F.3d at 173 (citing *Cassell*, 292 F.3d at 792–95). Yet, in the

---

at 355. It is true that the D.C. Circuit has found evasion of or flight from police officers probative of constructive possession, when coupled with other evidence. *See, e.g.*, *id.* at 355–36; *United States v. Littlejohn*, 489 F.3d 1355 (D.C. Cir. 2007). But the evidence of evasion in those cases, unlike here, permitted some reasonable inference that the defendant had a connection to or awareness of the gun. For instance, in *Bryant*, the defendant avoided officers while acting in concert with another individual who physically possessed the gun he was found to have constructively possessed—as evidenced by, among other things, overt gestures to that other individual and proof of a shared motive. *Bryant*, 523 F.3d at 355. And in *Littlejohn*, the defendant exited his brother's bedroom "in a hurried manner" right before recently arrived officers found a gun in that room. *Littlejohn*, 489 F.3d at 1337–39. In both cases, the facts of the evasion suggested some relationship to the gun (i.e., fleeing from the police alongside the person holding the gun or exiting the room where the gun was found) that would "indicate[] that [the defendant] had some stake in [the gun], some power over [it]." *Bryant*, 523 F.3d at 355. And still, the Circuit found the evidence "certainly not overwhelming," *Bryant*, 523 F.3d at 356, and the issue a "close" one, *Littlejohn*, 489 F.3d at 1339. Here, by contrast, assuming a jury did not believe that Burns held or threw the gun (the actual-possession evidence), all the record would show is that Burns ran away from the police on a street that abutted a large open field where a gun lay obscured in the dark. That alone would not suggest the kind of relationship to the gun necessary to support constructive possession under the evasion cases. Moreover, even if it did, the Court would still exclude the evidence under Rule 403.

key D.C. Circuit cases involving gun possession, the facts of the prior crime mirrored the facts of the charged constructive possession much more closely than they do here.

In *Cassell*, for example, the defendant was found guilty of constructive possession of a loaded 9-mm pistol and ammunition, among other contraband, found in his bedroom in his uncle's house. *Cassell*, 292 F.3d at 790. The district court admitted two prior instances of his possession of 9-mm semi-automatic firearms—one found in his pants pocket (actual possession) and the other underneath the rear bumper of his car (constructive possession). *Id.*at 790–91. Cassell's prior crimes were thus closer, in multiple respects, to the facts of his later charge, and he himself conceded on appeal that they were "relevant to knowledge and intent" of his constructive possession. *Id.* at 793. Similarly, in *Garner*, the Government's constructive possession theory was that the defendant had knowing and intentional control over a handgun found under his seat in a car after the car was pulled over and searched. *Garner*, 396 F.3d at 439. The prior-crimes evidence was that an officer previously found a similar handgun underneath, again, his seat in a car after the car was pulled over and searched. *See id.* at 440. And in *Brown*, both the latter gun possession and the prior one involved guns found in a room controlled by, and thus constructively possessed by, the defendant during police searches. *Brown*, 16 F.3d at 425. All three of those cases featured concrete factual parallels between the charged constructive possession and the prior crimes that a jury could, at least arguably, find probative for a non-propensity purpose. [9] Here, much less so.

Meanwhile, the miniscule probative value of Burns's prior crimes to any relevant non-propensity purpose pales in comparison to the substantial danger of unfair prejudice. The Supreme Court has warned that prior-crimes evidence "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair

---

[9] The details of the two prior crimes admitted in *McCarson* are not discussed in the D.C. Circuit's opinion, nor are they apparent from the district court's docket. *See United States v. McCarson*, No. 05-cr-68 (JEB/RMC) (D.D.C.).

opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476 (1948). "The overriding policy of excluding such evidence, despite its admitted probative value," the Court continued, "is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Id.* Exclusion prevents, in other words, a conviction for "who [the defendant] is," not "what he did" in the case on trial. *Linares*, 367 F.3d at 945. And that danger is far from theoretical: as the D.C. Circuit has explained, empirical evidence confirms that "juries treat prior convictions as highly probative." *Id.* at 945–46. Such danger jumps off the page of the Government's proffered evidence here. Should Burns's jury hear that he was convicted of gun charges (no less violent robberies) on three separate occasions, could anyone doubt the risk that they would presume he was the kind of person who would possess a gun again? Law, experience, and common sense all point toward an undeniable danger of unfair prejudice—a danger that even a stringent limiting instruction could not be expected to cure.

Yet, the Government retorts, that clear risk is not enough to justify exclusion under 403. Propensity-related prejudice is routine, the Government suggests, whereas Rule 403 allows a court to consider only "compelling or unique evidence of prejudice." ECF 20 at 10 (quoting *McCarson*, 527 F.3d at 174). To be fair to the Government, *McCarson*'s treatment of the 403 question, reviewing only for grave abuse of discretion, could be read to suggest such a proposition. But this Court highly doubts that the *McCarson* court meant to sweep so broadly. As the *Garner* court— which quoted that same language from *Cassell* as the *McCarson* court did—explained, "illegitimate evidence of character" is precisely the kind of "undue prejudice" that the court must weigh against any "legitimate," non-propensity purpose of such evidence when doing its Rule 403 balancing. *Garner*, 396 F.3d at 441 (quoting Advisory Committee's Notes on Fed. R. Evid. 404). And regardless, the risk of "unfair prejudice, confusing the issues, [and] misleading the jury" here

is "compelling" in any sense of that term, given the prior-crime evidence's dubious probative value to anything but character. Fed. R. Evid. 403; *McCarson*, 527 F.3d at 174. This Court need not, and does not, rely on a "*per se* rule of exclusion" for 404(b) evidence, as the Circuit says it may not. *Douglas*, 482 F.3d at 601. Instead, it carefully weighs the facts of this case in reaffirming its decision to exclude evidence of Burns's prior crimes.

### C. Clarifying the D.C. Circuit's Caselaw

For the reasons detailed above, Burns's prior-crimes evidence is inadmissible under *Linares*. That much is clear. But this Court would benefit from additional clarity in the D.C. Circuit's constructive possession caselaw for cases with slightly more (or any) evidence of the *actus reus* elements of constructive possession. All too often in gun-possession cases, the Government seeks to admit prior crimes that seem like blatant propensity evidence by relying on Circuit cases that leave unanswered critical questions about such evidence's non-propensity relevance. In *Cassell*, for instance, the Circuit explained its rule permitting prior possession evidence under Rule 404(b) as follows:

> A prior history of intentionally possessing guns, or for that matter chattels of any sort, is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so. If Cassell had been standing in an apartment close to a gun and never possessed one before, a jury might find it less likely that his proximity evidenced knowing and intentional possession.

292 F.3d at 794. But how, precisely, does a defendant's prior possession of guns make it more likely that he constructively possessed a given gun found near him months or years later? Unless it is the identical gun (which *Cassell* did not suggest it was in that case, nor do the other cases so require), that conclusion appears to arise from the logic that someone who knowingly and intentionally possessed a gun before is more likely to knowingly and intentionally do so again.

That logic is commonsensical—and, empirically, often convincing—but it is not permissible under Rule 404(b) because it reasons from the defendant's character.

Indeed, the *Cassell* court recognized as much, continuing, "[g]ranted, this evidence does go to propensity, the character circumstance forbidden by Rule 404(b)." *Id.* at 795. Yet, the Circuit permitted courts to admit it anyway because "Rule 404(b) bars not evidence as such, but a theory of admissibility," and "*any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Id.* (emphasis in original). That explanation leaves open the question of what, precisely, was the *non-propensity* reasoning rendering that evidence relevant and admissible under 404(b). What else justified its admission? Future courts could benefit from additional guidance.

That critical question has remained open in subsequent D.C. Circuit opinions. In *McCarson*, the Circuit explained the purported non-propensity relevance of that defendant's prior gun and drug convictions to his constructive possession of guns and drugs in his girlfriend's apartment in this way:

> McCarson's prior convictions were not only relevant; they were also highly probative of both his intent to distribute the crack cocaine and his constructive possession of the gun and the drugs. This evidence tended to undercut his argument at trial that the contraband belonged to his girlfriend because the Marshals found the contraband in his girlfriend's apartment inside a dresser containing what appeared to be her rather than his belongings.

527 F.3d at 174. This Court is unable to discern, at least on the facts presented by the Circuit, how evidence that McCarson possessed a gun in the course of another crime made it more likely that he intended to exercise control over a different gun found in his girlfriend's apartment years later—besides through the logic that someone who possessed a gun in the past is more likely to do so again.

The D.C. Circuit's formal reason for admitting such evidence is that prior gun possessions are "relevant to show knowledge of, and intent to possess," as well as "motive" to possess, firearms found in proximity to the defendant in the future, and "knowledge," "intent," and "motive" are permissible purposes under Rule 404(b)(2). *Cassell*, 292 F.3d at 792–93. Yet scholars and other circuits have questioned whether "recitations of laundry lists of permissive uses, with little analysis or attention to the particulars," provide sufficient guidance to trial courts tasked with faithfully applying Rule 404(b)'s necessarily fact-intensive inquiry. Christopher B. Mueller & Laird C. Kirkpatrick, 1 Federal Evidence § 4:28 (4th ed. 2023); *see* Daniel J. Capra & Liesa L. Richter, *Character Assassination: Amending Federal Rule of Evidence 404(b) to Protect Criminal Defendants*, 118 Colum. L. Rev. 769, 772 & n.10 (2018) (stating that "[s]cholars have long lamented the ease with which the government is permitted to sway a jury by parading a criminal defendant's past misdeeds before it," and citing articles).

As a unanimous en banc Seventh Circuit explained, a "permissible ultimate purpose (say, proof of the defendant's knowledge or intent)" does not "cleanse an impermissible subsidiary purpose (propensity)." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014) (en banc). If, that court continued, "subsection (b)(2) of the rule allows the admission of other bad acts whenever they can be connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose), then the bar against propensity evidence would be virtually meaningless." *Id.* That is because, especially in drug (and gun) cases, "few defendants are new to criminal activity and the range of possible defenses is fairly limited, so at least three of the permitted purposes listed in the rule—knowledge, intent, and identity—are routinely in play." *Id.* Thus, the Seventh Circuit held, "it's not enough for the proponent of the other-act evidence simply to point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it."

20

*Id.* at 856. Instead, Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Id.* Courts must therefore "not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* (emphasis in original). Such attention to the factual "specific[s]" of the case is necessary because "[s]potting a hidden propensity inference is not always easy." *Id.*

The Third and Fourth Circuits have also taken steps to clarify rules permitting overbroad admission of bad-acts evidence. *See* Capra & Richter, 118 Colum. L. Rev. at 773–74, 789 (citing *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014); *United States v. Green*, 617 F.3d 233 (3d Cir. 2010); *United States v. Hall*, 858 F.3d 254 (4th Cir. 2017)); *see also* Dora W. Klein, *"Rule of Inclusion" Confusion*, 58 San Diego L. Rev. 379, 406–11 (2021) (discussing these cases). This Court would welcome similar clarification in future D.C. Circuit rulings.

Nevertheless, even under the broadest reading of the binding caselaw, Burns's prior crimes may not come in under Rule 404(b) or 403.

## CONCLUSION

For the foregoing reasons, the Government's motion to reconsider the Court's denial of admission of evidence of Burns's prior crimes under Rule 404(b), ECF 20, is **DENIED**.

      **SO ORDERED.**


                                  _____

                                  JIA M. COBB
                                  United States District Judge

Date: April 10, 2025